IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ERIC D. KAUFFMAN          :          CIVIL ACTION
                               :
          v.                 :
                               :
TENNILLE KAUFFMAN, et al.   :        No. 11-CV-4896


**MEMORANDUM OPINION**

Ditter, J.                                        March 27, 2014

      Plaintiff, Eric D. Kauffman, brings this civil rights action, pursuant to 42 U.S.C. § 1983, against his former wife, Tennille Kauffman Walters,[1] and three officers of the Muhlenberg Police Department alleging wrongful arrest, malicious prosecution, abuse of process, and civil conspiracy. Kauffman contends his arrest for violating a protection from abuse order was improper and motivated by his former wife's personal relationship with an officer of the Muhlenberg Police Department, to whom she is now married. Walters, Officer Jason Livinghouse, Officer Michael Travis and Officer Juan Munoz have filed motions for summary judgment.[2] (Dkt. # 19, 22). For the reasons that follow, the motions are GRANTED.

   1. Factual and Procedural Background

      Kauffman and Walters are the divorced parents of a minor daughter (she was two-

---

[1] For clarity's sake, I will refer to defendant Tennille Kauffman by her current married name, Tennille Walters, or Walters in this opinion.

[2] This case was transferred to my docket by order dated February 13, 2013. I referred this matter to Magistrate Judge David R. Strawbridge for the exploration of settlement. In January, 2014, I was advised that those efforts were unsuccessful and that the parties wanted to proceed with a decision on the pending motions.

years-old at the time of this incident).  On March 26, 2009, with the advice of counsel, they consented to the issuance of a final protection from abuse order ("PFA") that required Kauffman to refrain from abusing, harassing, stalking, threatening or harming Walters and their minor daughter.  The couple shared custody of their daughter but primary physical custody was given to Walters.  A visitation schedule was set and custody exchanges were ordered to take place at the home of the paternal grandparents.  These custody and visitation provisions were included as terms of the PFA.  The PFA also put Kauffman on notice that a violation of its terms could result in his arrest on the charge of indirect criminal contempt.

On Monday evening, August 10, 2009, Walters called 911 to report that Kauffman had violated the PFA by failing to return their daughter at the appointed time and place. Officer Livinghouse responded to the 911 call.  He spoke to Walters by phone and was advised that a PFA was in place and that it included the terms of visitation.  Next, Officer Livinghouse reviewed the police copy of the PFA.[3]  Although Officer Livinghouse had never before seen this type of provision included in the terms of a PFA, he believed he had probable cause to arrest Kauffman based on the plain language of the PFA and the information provided by Walters.

For further assurance, Officer Livinghouse sought, but was unable to obtain, the advice of the on-call assistant district attorney.  He then consulted with Officer Michael

---

[3] The PFA required that a certified copy be provided to the Muhlenberg Township Police Department.

Travis.  Travis had also never seen custody terms in a PFA, but he agreed with Livinghouse that there was probable cause to arrest Kauffman.  Nevertheless, Travis decided to check with the Chief of Police.  The Chief had also never seen a custody provision in a PFA, but he agreed with his officers that, based on the information they had, Kauffman had violated the terms of the PFA and there was probable cause to arrest him for indirect criminal contempt.

Officers Livinghouse, Travis, and Munoz then proceeded to Kauffman's home at approximately 9:00 p.m., one and one-half hours after the child was to have been returned to his parents' home.  Kauffman answered the door with his daughter in his arms.  Kauffman was arrested and charged with indirect criminal contempt.  Walters was called to Kauffman's house to pick up her daughter and the officers allowed her to enter the home and take her daughter's bag and Kauffman's dog.  Walters took the dog because she did not want it to be left alone for an unknown period of time while Kauffman was being processed at the police station.  The dog was returned and nothing else was taken from the house.

What the police did not know prior to arresting Kauffman was that he had returned his daughter to his parents' home at the appointed time but Walters did not arrive to pick her up.  He waited for one-half hour before deciding to take the child back to his home because it was her bedtime.  *Plt.'s Statement of Facts*, ¶¶ 14-17.  Kauffman does not state that he provided this information to the officers at the time of his arrest, only that he

3

asked "to speak with a Police Sergeant because he did not believe he violated the PFA but was told he 'was not getting one.'"  *Id.* at 28.  After the charges were referred to the District Attorney's office for prosecution, the charges were withdrawn.[4]

As the result of this incident, Kauffman claims he suffered significant mental distress and humiliation, and that he incurred substantial attorney's fees to defend the criminal charges.  He also contends that he was not hired as a police officer for the city of Reading because of this arrest.  Kauffman complains that the actions of the officers were motivated by his former wife's relationship with her then boyfriend, now husband, Officer Jason Walters.

2.  Standard of Review

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party and, if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.

---

[4] After reviewing the PFA, the District Attorney's Office concluded as follows:

In this case, given the language of the PFA, it was appropriate for the officer to intervene. However, the particular facts of this case appear insufficient to prove beyond a reasonable doubt that the withholding of the minor child was done in an attempt to further abuse the plaintiff.  As such, this situation should be remedied through family court.  Therefore, we cannot proceed with these charges and they will be withdrawn.

*See Plt.'s Resp. to Relevant Facts*, Exh. E.

3. <u>Discussion</u>

The defendants argue that, accepting all evidence in the light most favorable to Kauffman, he has not established that an unlawful arrest took place or that any other constitutional right was violated. The police officers contend the arrest was made with probable cause, and alternatively, that they are protected by qualified immunity.

Walters adopts the arguments set forth is the police officers motion for summary judgment and also argues that the constitutional claims against her fail because she is not a state actor.[5] Kauffman has not responded to Walters' motion. It is therefore granted.

A. <u>Count One - Unreasonable Arrest</u>

Kauffman asserts a claim against all of the officers for violating his Fourth Amendment right to be free from unlawful seizure or arrest. The Fourth Amendment is not "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). The remedy for a violation of an individual's constitutional rights by someone acting under color of state law is provided in 42 U.S.C. § 1983.

Here, Kauffman claims his arrest was without probable cause. It is well-established that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997).

---

[5] An individual who is not an officer of the state may be found to have acted under color of state law for § 1983 purposes if she is a willful participant in joint action with the State or its agents. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). "[A]n otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citing *Dennis*, 449 U.S. at 27-28).

However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).  Although it requires more than mere suspicion, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995).  The issue of whether there is probable cause is generally a question for the jury; however, if the evidence, viewed most favorably to plaintiff, leads to the conclusion that probable cause did exist as a matter of law, summary judgment may be granted.  *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

Pennsylvania's *Protection from Abuse Act* (the "Act"), specifically 23 Pa. C.S.A. § 6113(a), provides as follows:

> An arrest for violation of an order issued pursuant to this chapter . . . may be without warrant upon probable cause whether or not the violation is committed in the presence of the police officer or sheriff in circumstances where the defendant has violated a provision of an order consistent with section 6108(a)(1), (2), (3), (4), (6), (7), or (9) (relating to relief).  The police officer or sheriff may verify the existence of a protection order by telephone, radio or other electronic communication with the appropriate police department, Pennsylvania State Police registry, protection order file or issuing authority.  A police officer or sheriff shall arrest a defendant for violating an order issued under this chapter by a court within the judicial district, issued by a court in another district within this Commonwealth or a foreign protection order issued by a comparable court.

6

*Id.*  The Act permits a court to grant a protective order or approve a consent agreement that establishes temporary custody and visitation rights.  23 Pa. C.S.A. § 6108(a)(4).  A defendant arrested pursuant to § 6113 for violating § 6108(a)(4) will be charged with indirect criminal contempt.  23 Pa. C.S.A. § 6114(a) and (a.1).[6]

The following relevant facts are uncontested.  Kauffman and Walters consented to the entry of a PFA that included a provision for his temporary custody of their minor child on designated days from 7:00 a.m. to 7:30 p.m., and that the transfer of physical custody would take place at his parents' home.  When Walters failed to appear to resume custody, Kauffman took the child to his home rather than remaining with her at the home of his parents.  Walters spoke with the local police but failed to tell them she had been more than a half hour late in going for the child.  The police confirmed the terms of the PFA and responded to Kauffman's house where they found him with the child an hour and a half after they thought she should have been returned to her mother.

Based on what the police knew and didn't know, it was reasonable for the officers to conclude that Kauffman had violated the PFA, and under Pennsylvania law, such a violation is sufficient to justify an arrest on the charge of an indirect criminal contempt.[7]

---

[6] The PFA also included notice to Kauffman that a violation of the PFA could result in his arrest on the charge of indirect criminal contempt punishable by a fine of up to $1,000 and/or six months imprisonment.

[7] Kauffman contends there was no indirect criminal contempt within the meaning of the Act because there are two conditions precedent: 1) that there is PFA order; and 2) that the violations relate to a protected person.  He concedes that there was a valid PFA but denies that the minor child was a protected person under the PFA.  *Plt.'s Mem.* at 6-7.  In support of this position he ignores the first page of the PFA which specifically lists the child as a protected person and relies on the second page where the box is not checked.  No reasonable finder of fact, reviewing the entire document – one that includes the child's name and date of birth, and sets the terms of custody and visitation – could reach such a conclusion based on an omitted check mark.

Thus, I conclude as a matter of law that there was probable cause to arrest Kauffman and summary judgment must be granted in favor of all defendants as to Count One.

B.  Count Two - Malicious Prosecution

To establish a claim for malicious prosecution under Pennsylvania law, Kauffman must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in his favor; 3) the proceeding was initiated without probable cause; and 4) the defendant acted maliciously. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  If probable cause is established, a malicious prosecution claim fails as a matter of law. *Kossler v. Crisanti*, 564 F.3d 181, 195 (3d Cir. 2009).

Kauffman does not oppose the grant of summary judgment on this count because he "believes it is largely redundant with Count 3." *Plt's. Mem*. at 8.  In any event, having concluded that there was probable cause for Kauffman's arrest as discussed above, I must grant summary judgment as to all defendants on Count Two.

C.  Count Three - Abuse of Process

Kauffman also asserts a separate tort claim – abuse of process.  A § 1983 claim for abuse of process requires evidence that the "the prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Dunne v. Twp. of Springfield*, 500 Fed. Appx. 136, 139 (3d. Cir. 2012) (quoting *Rose v. Bartle,* 871 F.2d 331, 350 n.17 (3d. Cir. 1989)).  There must be legal process used as a tactical weapon to coerce a desired result that is not the legitimate object of that process.  Here, we do not

need to decide what is, was, or might be an abuse of process because the arrest wasn't used for anything at all.  Kauffman was not prosecuted and the matter was referred back to Family Court.

Obviously, there can be no abuse of process unless there is a use of process.  Here there was none, and I must grant defendants' motions.

D.  <u>Count Four - Civil Conspiracy</u>

To state a claim for civil conspiracy, Kauffman must present evidence to show: 1) two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual damage.  *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008).

There was no such scheme.  Walters reported what she reported.  The police made an independent judgment to arrest.  They had probable cause to do so.

In the absence of an agreement, there can be no conspiracy.  This claim fails as a matter of law.  Summary judgment shall be granted on Count Four.

4.  <u>Conclusion</u>

I have considered the evidence in the light most favorable to Kauffman, and conclude that he has failed to present sufficient evidence to support his claims. Therefore, summary judgment is granted in favor of all defendants on all counts of the complaint.  The appropriate orders follow.